# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JESUS BONILLA CASTANEDA,** | **1:16-cv-01562-LJO-SKO (PC)** |
| Plaintiff, | |
| v. | **SCREENING ORDER DISMISSING FIRST AMENDED COMPLAINT (Doc. 1) WITH LEAVE TO AMEND** |
| **D. ALLEN,** *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff is a state prisoner currently incarcerated at R.J. Donovan Correctional Facility in San Diego, California. Plaintiff brings this pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("§ 1983") against 17 individual officers and officials at Pleasant Valley State Prison ("PVSP"), Corcoran Substance Abuse Treatment Facility ("SATF"), Kern Valley State Prison ("KVSP"), and North Kern State Prison ("NKSP"). Plaintiff filed a complaint on October 17, 2016, which the Court dismissed with leave to amend on May 4, 2017. ECF Document No. ("Doc.") 1; Doc. 10. Plaintiff filed a first amended complaint ("FAC") on July 10, 2017. Doc. 13.

## II. SCREENING REQUIREMENT AND STANDARD.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Similarly, when a plaintiff is proceeding in forma pauperis but § 1915A does not apply, the court

1

"shall dismiss the case at any time if the court determines" that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." *Pierce v. San Francisco Exam'r*, No. 15-CV-06051-EMC, 2016 WL 2851649, at *1 (N.D. Cal. May 16, 2016) (quoting 28 U.S.C. § 1915(e)(2)(B)). If an action is dismissed on one of these three basis, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Id.*

### III. **PLAINTIFF'S ALLEGATIONS**

The following facts are drawn from Plaintiff's FAC, and are accepted as true only for the purposes of this screening. *Daniels–Hall v. Natl. Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Plaintiff's claims are related to an February 7, 2010, incident where Plaintiff and his cellmate were assaulted by corrections officers. Doc. 13 at 4. Criminal charges for attempted murder were filed against Plaintiff in relation to the incident. *Id*. Plaintiff alleges that the charges were falsified by the officers involved in the assault when Plaintiff refused to state that his cellmate attacked the officers. *Id*.

After the incident, Plaintiff was placed in administrative segregation ("AdSeg") for three years. *Id*. When Plaintiff was released from AdSeg, he began collecting declarations for his criminal trial from inmates who had witnessed the assault. *Id*. Another inmate told prison staff that Plaintiff was collecting declarations. *Id*. Plaintiff went before a classification committee on September 24, 2013, and was endorsed to remain in a level III facility at PVSP. *Id*. Plaintiff was brought before the committee again on October 23, 2013, and was endorsed for transfer to SATF, a level IV facility. *Id*. Defendants Allen, Guillen, Walker, and Duran were members of the second committee. *Id*. Captain Allen told Plaintiff that he was going to be transferred to SATF because of the possibility of injury or death. *Id*.

During Plaintiff's transfer to SATF, his collected declarations and the lists of possible witnesses in his criminal case were removed from his property. *Id*. at 6. Plaintiff alleges that Captain Allen, Mr. Guillen, Mr. Walker, and Mr. Duran conspired with additional individuals named Burnes, Saveda, and Mackin to deprive Plaintiff of the documents.[1] *Id*. Plaintiff alleges that he was subjected to "a campaign of harassment" while at SATF, though he does not provide any particular details as to what constituted that harassment. *Id*.

On January 6, 2015, Plaintiff's wheelchair was damaged by prison staff. *Id*. at 14. Plaintiff, who is paraplegic, received a replacement wheelchair. *Id*. On January 28, 2015, he complained to a nurse that the replacement wheelchair was injuring his shoulders, elbows, back, and wrists, and was not designed for an individual with Plaintiff's condition. *Id*. The nurse told Plaintiff that SATF would not fix

---

[1] Plaintiff refers to Burnes, Saveda, and Mackin as "Defendants" in his recitation of facts, but none of these three individuals appears on Plaintiff's list of defendants. *Compare* Doc. 13 at 1-2 with *id*. at 5.

3

Plaintiff's wheelchair because it was too expensive and encouraged Plaintiff to file an administrative appeal of the decision. *Id*. Plaintiff filed an ADA administrative appeal, which he alleges was intentionally delayed due to the complexity of the issue. *Id*. Defendants Cryer, Smith,[2] and Sherman implemented new regulations which prevented Plaintiff's wheelchair from being repaired on February 21, 2015. *Id*. at 14-15.

The ADA administrative appeal decision was issued on March 3, 2015, and determined that Plaintiff's wheelchair could not be repaired and would be destroyed. *Id*. at 15. Mr. Smith ordered the wheelchair destroyed and also concluded that the replacement wheelchair was appropriate for Plaintiff. *Id*. Plaintiff sought assistance from the prison legal office, and believes that Mr. Cryer, Mr. Smith, and Warden Sherman had tampered with Plaintiff's mail to the prison legal office. *Id*. at 15-16.

Also while at SATF, Plaintiff alleges that he spoke to Defendant Williams regarding the practice of corrections officers intentionally assigning violent inmates to share cells with Plaintiff. *Id* at 7. Defendant Williams attempted to dissuade Plaintiff from reporting in-cell assaults and said it would be taken up at a committee meeting. *Id*. At the committee meeting, with Defendants Collins, Hacker, and Williams in attendance, Mr. Williams said that Plaintiff would remain in general population. *Id*. Plaintiff argued that staff had been intentionally placing inmates in his cell to assault him. *Id*. Mr. Collins told Plaintiff that if he reported in-cell assaults, Mr. Collins would make sure that Plaintiff was seriously hurt or killed by other inmates. *Id*. at 7-8. Plaintiff was later placed in AdSeg, and endorsed for transfer to High Desert State Prison ("HDSP"). *Id.* at 8. After filing an emergency appeal, Plaintiff informed Defendant Sherman and the AdSeg committee members that Plaintiff's safety concerns would accompany him to HDSP. *Id*.

Defendant Peterson told Plaintiff that the AdSeg committee members were award of the possibility that Plaintiff would be hurt or killed at HDSP, and Plaintiff was warned not to report the in-

---

[2]Mr. Smith, ADA coordinator at SATF, appears twice on Plaintiff's list of Defendants. *See* Doc. 13 at 2.

4

cell assaults. *Id*. at 9. Plaintiff was transferred to HDSP on December 11, 2015, but after raising safety concerns he was transferred to KVSP on January 6, 2016. *Id*. In a later telephone interview, Mr. Peterson informed Plaintiff that he was aware of the transfer. *Id*.

At KVSP Plaintiff informed Defendant Acevedo about the prior security issues. *Id*. Mr. Acevedo said Plaintiff would likely be killed at KVSP, and that he was good friends with Mr. Williams. *Id*. On January 14, 2016, Plaintiff attended a classification committee meeting with Mr. Acevedo and an individual identified as R. Jones. *Id*. at 10. Plaintiff asked to be placed into protective custody, and Mr. Acevedo said that Mr. Williams told him "to not allow Plaintiff to escape his punishment." *Id*. Mr. Acevedo had Plaintiff placed in AdSeg and recommended that Plaintiff return to A-Yard. *Id*.

Plaintiff appeared before a classification committee headed by Defendant Phifer on January 21, 2016. *Id*. Plaintiff asked to be placed in protective custody and not returned to A-Yard. *Id*. After looking at Plaintiff's file and seeing an entry regarding the charges for attempted murder, Warden Phifer ordered Plaintiff sent back to A-Yard. *Id*. Defendant Chavez escorted Plaintiff to A-Yard after telling Plaintiff that a doctor wanted to see him. *Id*. Officer Chavez told A-Yard staff to put Plaintiff in his cell with his cellmate no matter what Plaintiff said. *Id*. at 10-11. Plaintiff was placed in a cell with a member of the Mexican Mafia, and was "kept prisoner" by the cellmate. *Id*. at 11.

On January 28, 2016, Plaintiff told unnamed medical staff members that prison officials had been trying to have him hurt or killed, and expressed suicidal ideations. *Id*. Plaintiff was placed under psychiatric care at the Correctional Treatment Center. *Id*. Mr. Acevedo visited Plaintiff at the Correctional Treatment Center on February 10, 2016, and said that he would have Plaintiff returned to A-Yard. *Id*. He also told Plaintiff that he had confiscated two and a half boxes of Plaintiff's property but had "allowed plaintiff to retain a half bottle of lotion so that plaintiff could use it the next time that he was assaulted (sexually)." *Id*. Plaintiff subsequently began a transition to sensitive needs yard and placed in an enhanced outpatient program AdSeg. *Id*. at 11-12.

On February 24, 2016, while Plaintiff was using a computer for legal research, Mr. Acevdo

instructed staff to pack up Plaintiff's property. *Id*. at 12. After finishing his research, Plaintiff was taken to A-Yard. *Id*. Plaintiff raised safety concerns with A-Yard staff and was put in a holding cell. *Id*.

Plaintiff also alleged that he was able to determine from responses to his administrative appeals that the appeals coordinator had notified involved staff members about the appeals and that the staff members had asked for Plaintiff to be returned to A-Yard for filing the appeals. *Id*. at 13.

### IV. ANALYSIS

**A.  C. Navarez**

Plaintiff's FAC lists a C. Navarez, Senior Hearing Officer at PVSP, as a Defendant. Doc. 13 at 2. Plaintiff's FAC, however, does not include any allegations against Mr. Navarez, or allegations which could reasonably be construed to refer to such a person. Since Plaintiff has failed to make any allegation whatsoever against Mr. Navarez, he is DISMISSED from this case.

**B.  First Amendment Retaliation**

Plaintiff's complaint alleges retaliation in violation of Plaintiff's First Amendment rights. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary

judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to the prior lawsuit). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). Filing prison grievances and pursuing civil rights litigation are constitutionally protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in those activities. *Rhodes*, 408 F.3d at 567.

To sustain a retaliation claim, plaintiff must plead facts that support a reasonable inference that plaintiff's exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's challenged conduct. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the challenged conduct. *Pratt*, 65 F.3d at 806 (citing *Rizzo*, 778 F.2d at 532). Mere allegations of retaliatory motive or conduct will not suffice. A prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990).

The Court will address Plaintiff's allegations starting from the first identifiable date within the statute of limitations on which events are specifically alleged to have taken place, that is, September 24, 2013. Doc. 13 at 5. Plaintiff alleges that on that date he was endorsed by a classification committee to remain at PVSP at a level III classification. *Id*. On October 23, 2012, he was brought back before the committee and endorsed for transfer to SATF at a level IV classification. *Id*. Plaintiff alleges that, in the interval between the two meetings, members of the committee learned that he had been gathering

declarations from inmates regarding the 2010 assault. *Id*. Plaintiff also alleges that he was "subjected to a campaign of harassment" while at SATF. Doc. 13 at 6. Plaintiff states that he "feared that continuing to challenge the false criminal charges would lead to Plaintiff being placed in a situation where custody would have Plaintiff killed." *Id*. at 4.

Plaintiff has set forth a cognizable claim of retaliation in this matter. He has alleged that Captain Allen, Mr. Guillen, Mr. Walker, and Mr. Duran were part of a committee who transferred Plaintiff to SATF, a more restrictive facility at which Plaintiff feared death or injury, a transfer which could constitute an adverse action. Plaintiff also has alleged he was engaged in the protected activity of gathering statements intended for use in opposing pending criminal charges, and has alleged that the adverse action chilled his protected activity by leading him to fear that continuing to pursue his defense would lead to injury or death.

While Plaintiff has not alleged with specificity that the adverse action occurred because of Plaintiff's protected activity, he has alleged sufficient facts to support the inference of causation. Since "direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient" at the pleading stage. *Watison*, 668 F.3d at 1114. Plaintiff has not alleged any particular relationship between Defendants and the criminal charges pending against Plaintiff, but Plaintiff has alleged facts which indicate a temporal relationship between the protected activity and adverse action. Given the liberal construction applied to complaints filed by pro se prisoners at the screening stage, the Court finds that Plaintiff has alleged sufficient facts.

Plaintiff has also pled the final element required to state a First Amendment retaliation claim in the prison context, that the retaliatory action did not advance a legitimate correctional goal. "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious." *Watison*, 668 F.3d at 1114-15. A plaintiff need not use the specific words "arbitrary and capricious" so long as the conduct alleged rises to that level. *See Watison*, 668 F.3d at 1115 (retaliation claims were properly pled where plaintiff alleged that defendants made

false statements with a retaliatory motive). Here, the facts alleged in Plaintiff's FAC permit the inference of retaliatory motive as previously explained. While transferring a prisoner from one facility to another is not on its face an arbitrary or capricious action, a transfer made with the intention of exposing a prisoner to dangerous conditions would not advance a legitimate correctional goal. Therefore, Plaintiff has alleged the minimal facts to state a claim of First Amendment retaliation against Captain Allen, Mr. Guillen, Mr. Walker, and Mr. Duran.

C. **Eighth Amendment**

Prison officials are required to take reasonable measures to guarantee the safety of inmates and officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128-29 (9th Cir.1998). An inmate has no constitutional right, however, to enjoy a particular security classification or housing. *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions).

To establish an Eighth Amendment constitutional violation stemming from a failure to protect, both an objective and subjective requirement must be met. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious,'" that is, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, "a prison official must have a 'sufficiently culpable state of mind,'" which is "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297, 302-03). The officer must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986). However, before being required to take

action the prison official must have more than a "mere suspicion" that an attack will occur. *See id*. To prove knowledge of the risk a plaintiff may rely on circumstantial evidence. The obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir.1995). Thus, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Verbal threats alone are generally insufficient to state a claim for violation of the Eighth Amendment. *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987). The Ninth Circuit has expressly held that "it trivializes the [E]ighth [A]mendment to believe that a threat constitutes a constitutional wrong." *Id*. Additionally, "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm." *Williams v. Wood*, 223 Fed. App'x 670, 671, 2007 WL 654223, at *1 (9th Cir. 2007). Injury is not a necessary element of a failure to protect claim, but there must be a more than speculative and generalized fear of harm.

Plaintiff appears to allege that Defendants were deliberately indifferent to his safety when he was transferred to HDSP, transferred to KVSP, and released to A-Yard. In order to plead this theory, Plaintiff must allege facts showing that placing him in those locations created a sufficiently serious threat to Plaintiff's safety and that each Defendant knew of and disregarded this risk. Plaintiff has met this burden as to some Defendants, but not as to others.

Plaintiff alleges that Mr. Williams attempted to discourage Plaintiff from reporting in-cell assaults. He alleges that Warden. Collins told Plaintiff that if Plaintiff reported in-cell assaults, Warden. Collins would make sure that Plaintiff was seriously hurt or injured. He alleges that Mr. Williams, Warden Collins, and Captain Hacker were all present at a meeting where Plaintiff raised his concerns about in cell assaults He alleges that Warden Sherman and Mr. Peterson were aware of a risk of assaults to Plaintiff if he was transferred to HDSP, and did not take any action. Plaintiff also alleged that Mr. Peterson discouraged Plaintiff from reporting in-cell assaults. Plaintiff alleges that when he told Mr. Acevedo about his prior security incidents, Mr. Acevedo said Plaintiff would likely be killed and

10

recommended that Plaintiff be returned to A-Yard. Warden Phifer sent Plaintiff back to A-Yard despite Plaintiff's request to be placed in protective custody.

Plaintiff has alleged sufficient facts to state Eighth Amendment violations against Mr. Williams, Warden Collins, Captain Hacker, Warden Sherman, Mr. Peterson, Mr. Acevedo, and Warden Phifer. Plaintiff alleges, at least indirectly, that he experienced in-cell assaults from other prisoners, reported those assaults, and feared further in-cell assaults. The previously named Defendants were aware of the danger posed to Plaintiff, and disregarded the danger. This is enough to push Plaintiff's allegations across the line from a speculative harm to one that is sufficiently concrete to state an Eight Amendment claim. Plaintiff brought these concerns to Defendants, who failed to act or who acted to return Plaintiff to potentially dangerous situations.

Plaintiff has not alleged any facts which indicate that Officer Chavez was aware of any particular danger to Plaintiff. Plaintiff has therefore not properly alleged that Officer Chavez acted with deliberate indifference to his safety, and his claim against Officer Chavez is DISMISSED with leave to amend.

**D.    ADA Claims**

Title II of the Americans with Disabilities Act ("ADA") "prohibit[s] discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir.1997); *Duffy v. Riveland*, 98 F.3d 447, 453-56 (9th Cir.1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052. "To recover monetary

damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir.2001).

Title II of the ADA prohibits discrimination only in programs of a public entity or by a public entity. 42 U.S.C. § 12132. The ADA defines a public entity as "any state or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B). A public entity, "as it is defined within the statute, does not include individuals." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999). "A plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [their] individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Thus, as all Defendants are State officials, liability is precluded against all Defendants and Plaintiff has failed to state a viable ADA claim. Since amendment would be futile, Plaintiff's ADA claims brought under § 1983 are DISMISSED without leave to amend.

## V. **CONCLUSION AND ORDER**

For the reasons stated Plaintiff's claims for ADA violations are DISMISSED without leave to amend. His claim against Officer Chavez is DISMISSED with leave to amend. Plaintiff will be given an opportunity to amend his complaint to cure the deficiencies in his claim against Officer Chavez, to the extent that he is able to do so in good faith. Any amended complaint shall be filed within thirty days of this order. This will be Plaintiff's last chance to state a cognizable claim against Officer Chavez. He will not again be given leave to amend.

Alternatively, Plaintiff may proceed on the remaining claims and against the remaining Defendants. If he elects to do so, within 30 days Plaintiff must notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed on the cognizable claims in his FAC.

If Plaintiff elects to amend his complaint, he may not change the nature of this suit by alleging new, unrelated claims. *See Aul v. Allstate Life Ins. Co.*, 993 F.2d 881, 884 (9th Cir. 1993) ("A claim

based on different rights and established by different transactional facts will be a different cause of action."); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits."). Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each Defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. *Iqbal*, 556 U.S. at 677. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each named defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Finally, an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), and must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted). Thus, any amended complaint must be written or typed so that it so that it is complete in itself without reference to any earlier filed complaint. Local Rule 220.

<u>If Plaintiff fails to comply with this Order, this case will be dismissed with prejudice for failure to obey a court order and failure to prosecute.</u> The Court also cautions Plaintiff that failure to comply with the Federal Rules of Civil Procedure, this Court's Local Rules, or any court order may result in this action being dismissed. *See* Local Rule 110.

IT IS SO ORDERED.

    Dated: **September 18, 2017**       /s/ Lawrence J. O'Neill
                                                           UNITED STATES CHIEF DISTRICT JUDGE