UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS BONILLA CASTANEDA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CDCR, et al.,<br><br>　　　　　Defendants. | No. 1:16-cv-01562-LJO-SKO (PC)<br><br>FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. 36) |

**I.　Background**

Plaintiff, Jesus Bonilla Castaneda, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The Court screened Petitioner's First Amended Complaint ("FAC") pursuant to 28 U.S.C. § 1915A and found that it stated a claim for deliberate indifference to a serious risk of harm to Plaintiff under the Eighth Amendment of the United States Constitution[1] against Substance Abuse Treatment Facility ("SATF") Defendants Warden Sherman, Associate Warden Collins, Captain Hacker, CCII Peterson, and CCII Williams,

---

[1] Petitioner alleged three claims in his FAC and was given the option to voluntarily dismiss claims or to have the claims severed into other actions. (Doc. 16.) Plaintiff determined that he would proceed on Claim II, deliberate indifference to a serious risk of harm, and voluntarily dismissed Claims I and III. (Doc. 17.)

1

and Kern Valley State Prison ("KVSP") Defendants Warden Pfeiffer, and CCI Acebedo.[2] (Doc. 13.) On June 21, 2018, Defendants collectively filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 36.) Plaintiff filed his opposition, (Doc. 39), to which Defendants replied, (Doc. 41). The motion is deemed submitted. L.R. 230(*l*). For the reasons discussed herein, Defendants' motion is **DENIED**.

## II. Legal Standard

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. Dismissal is proper if there is a lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1762 (2012). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006); *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Daniels-Hall*, 629 F.3d at 998; *Sanders*, 504 F.3d at 910; *Huynh*, 465 F.3d at 996-97; *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). Pleadings of prisoners proceeding *pro se* are liberally construed and any doubt is

---

[2] In their motion to dismiss, Defendants informed the Court that Plaintiff misspelled Defendant Pfeiffer's name as "Phifer" and Defendant Acebedo's name as "Acevedo" in the FAC.

resolved in the inmate's favor. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

Further, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216-17. "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Id.* (emphasis in original). "Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. Discussion

### A. The First Amended Complaint[3]

Plaintiff alleges a claim for deliberate indifference to a serious risk of harm under the Eighth Amendment based on events that occurred in late 2015 at SATF and events occurring in early 2016 at KVSP.

Plaintiff's claims relating to SATF are against Defendants CCII Williams, Associate Warden Collins, Captain Hacker, and CCII Peterson. Plaintiff contends that, on an unspecified date, he spoke to Defendant Williams about prison staff intentionally placing him in cells with assaultive inmates. (Doc. 13 at 7.) Plaintiff believed Williams tried to talk him out of reporting

---

[3] In their reply to Plaintiff's opposition, Defendants claim Plaintiff raised new factual allegations in his opposition. However, the undersigned limits its review to the factual allegations contained in the FAC.

3

the assaults, but when Plaintiff insisted, Williams stated, "it would be discussed at [Unit Classification Committee ("UCC")] in the coming days." *Id*.

Plaintiff went before the UCC, comprised of Collins, Hacker, and Williams. Williams read a prepared statement indicating "that plaintiff would remain with no changes." *Id*. As Plaintiff was being dismissed, he addressed Williams about his safety concerns with the cellmates he was being assigned. Although they had previously discussed the matter, "Williams feigned ignorance of the discussion." *Id*. Plaintiff addressed the committee and stated that prison staff had intentionally placed inmates in his cell to assault Plaintiff. *Id*. Collins informed Plaintiff that if Plaintiff attempted to report the in-cell assaults, he would be either seriously hurt or killed by other inmates. *Id*. at 8. Plaintiff decided to end the meeting and returned to his cell. *Id*.

The following week, Plaintiff was approached by an officer, who was present during the UCC and encouraged him to report the in-cell assaults. *Id*. Plaintiff reported the assaults and was placed in Administrative Segregation ("Ad-Seg"). *Id*. During his time in Ad-Seg, a different committee determined that Plaintiff's safety issues were localized to SATF and endorsed Plaintiff for transfer to High Desert State Prison ("HDSP"). *Id*. Plaintiff filed an emergency appeal to stop the transfer, because he was concerned that all of the inmates in SATF Ad-Seg were aware that Plaintiff reported the in-cell assaults and were all being transferred to HDSP. *Id*. Plaintiff did not receive a response to his emergency appeal, so he wrote to two letters to Warden Stu Sherman and the Ag-Seg committee members. *Id*. Plaintiff described his safety concerns and how they would no longer be localized to SATF if he was transferred with all of the other Ad-Seg inmates to HDSP. *Id*.

In response to the letter, Defendant Peterson spoke to Plaintiff. *Id*. Peterson acknowledged that all of the Ag-Seg committee members were aware that Plaintiff would be seriously hurt or killed on transfer to HDSP, but stated "there was a price to pay" for reporting the in-cell reports

4

after Collins had warned him not to. *Id*. at 8-9.

On December 11, 2015, Plaintiff was transferred to HDSP. A committee at HDSP verified the danger to Plaintiff and transferred him to KVSP on January 6, 2016. *Id*. at 9.

Plaintiff's claims relating to KVSP are against Defendants Pfeiffer and Acebedo. Four days after Plaintiff arrived at KVSP, Plaintiff went before Acebedo in preparation for an upcoming parole hearing. *Id*. Acebedo told Plaintiff that Plaintiff would likely be killed before he was released and that Acebedo was good friends with Defendant Williams, from SATF. *Id*.

Several days after his meeting with Acebedo, Plaintiff had a telephone interview with Peterson, from SATF, in which Peterson "made it clear that he was well aware that Plaintiff had been transferred out of HDSP and into KVSP." *Id*.

On January 14, 2016, Plaintiff went before a "Classification Committee," headed by Acebedo and R. Jones, who is not named as a defendant in this case. *Id*. at 10. Acebedo told Plaintiff that he had spoken with Williams, who told Acebedo not to allow Plaintiff to escape punishment. *Id*. Acebedo informed Plaintiff he would be returned to Ad-Seg with the recommendation that he be placed in A-yard. *Id*.

On January 21, 2016, Plaintiff went before a "Classification Committee" headed by Defendant Warden Pfeiffer, where Plaintiff asked to be kept in protective custody. *Id*. After looking through Plaintiff's file and coming across a reference to Plaintiff's "Attempted Murder of a C.O.," Pfeiffer ordered Plaintiff to be placed in the A-yard. *Id*. Plaintiff vowed not to allow himself to be returned to A-yard. *Id*. "KVSP staff" sent an officer to inform Plaintiff that the doctor wanted to see him. *Id*. Once in restraints, Plaintiff was escorted to A-yard and A-yard staff was told "no matter what he says, put him in the cell with his cellie." *Id*. at 11. Plaintiff was put in a cell with an inmate who was "a verified Mexican Mafia member" who "kept" Plaintiff "prisoner in his cell." *Id*.

On January 25, 2016, Plaintiff saw medical staff, informed them of his concerns that prison staff were taking steps to have him hurt or killed, and expressed suicidal ideation. *Id*. Plaintiff was sent directly to the Correctional Treatment Center ("CTC") and placed under psychiatric care. *Id*. Acebedo came to see Plaintiff at the CTC on February 10, 2016, and told Plaintiff that he was going to ensure Plaintiff returned to A-yard. *Id*. Further, Acebedo stated he had confiscated 2-1/2 boxes of Plaintiff's property, but had left a half bottle of lotion for Plaintiff's use the next time he was sexually assaulted. *Id*. After this meeting, medical staff at CTC took steps to ensure Plaintiff was not returned to A-yard, but instead would be transitioned to a Sensitive Needs Yard in an Enhanced Outpatient Program ("EOP"). *Id*. at 11-12.

On February 24, 2016, Plaintiff accessed a computer. *Id*. at 12. While away from his cell, Acebedo instructed staff to pack up Plaintiff's property and return him to A-yard. *Id*. Plaintiff begged the escorting officers not to return him to A-yard, but they explained that Acebedo had instructed them to return him, despite Plaintiff's protestations. *Id*. The escorting staff did not relay Acebedo's instructions to the A-yard staff. *Id*. Plaintiff told A-yard staff about his concerns and they placed him in a holding cell until arrangements were made to return Plaintiff to Ad-Seg. *Id*.

Plaintiff alleges that he "had been submitting administrative appeals (emergency processing requested)" and when he received responses to those appeals, Plaintiff could tell that the appeals coordinator had notified the staff identified in his appeals. *Id*. In turn, those staff members asked for Plaintiff to be returned to A-yard. *Id*.

These allegations were found sufficient, by the District Judge assigned to this case, to state a cognizable claim against Defendants for deliberate indifference to a serious risk of harm to Plaintiff, in violation of his rights under the Eighth Amendment. (Doc. 16.)

### B. Plaintiff States a Claim for Violation of His Eighth Amendment Rights

Defendants contends that Plaintiff has not stated a claim for violation of his Eighth Amendment rights. (Doc. 36.) Specifically, Defendants claim: (1) Plaintiff has not shown he faced an objectively substantial risk of serious harm; (2) there are no allegations that show Defendants Sherman and Pfeiffer were aware of and disregarded facts indicating Plaintiff was at risk of serious harm; and (3) Defendants are entitled to qualified immunity. *Id*. at 4.

#### 1. Standard of Review

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corr. Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, the prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, 714 F.3d at 1160 (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health . . . ." *Farmer*, 511 U.S. at 843 (citing *Helling*, 509 U.S. at 35). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id*. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id*. at 836-37. This involves both objective and subjective components.

7

First, objectively, the alleged deprivation must be "sufficiently serious" and where a failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

### 2. **Objectively Substantial Risk of Serious Harm**

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1988) (internal quotation marks omitted)). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objectiv[e]." *Id.* (internal citations and quotations marks omitted). However, not every injury a prisoner suffers "at the hands of another [ ] translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A threat of harm must be "objectively, sufficiently serious." *Id.* (internal citations and quotations marks omitted).

Plaintiff must allege more than a general risk of violence in order to state a claim for failure to protect. Here, Plaintiff alleges that he was assaulted in his cell at SATF, sent back to his cell after reporting the assaults, and held captive in his cell by his cell mate in KVSP, after warning prison officials that he needed to be placed in protective custody.

8

Defendants contend Plaintiff's claim fails because he did not claim he was physically harmed by other inmates. However, Plaintiff does not need to show that he was physically harmed. Rather, Plaintiff's allegations must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 843. It is

> 'cruel and unusual punishment to hold convicted criminals in unsafe conditions.' It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event. . . . [A] prisoner need not wait until he is actually assaulted before obtaining relief.

*Helling v. McKinney*, 509 U.S. 25, 33-34 (1993) (citations omitted). Plaintiff has alleged the risk of harm to him was sufficiently serious, given that Plaintiff, a paraplegic confined to a wheelchair, was assaulted by inmates at SATF and held hostage in his cell at KVSP. Based on the foregoing, Plaintiff has stated a cognizable Eighth Amendment claim.

### 3. **Deliberate Indifference Toward Risk of Harm**

Deliberate indifference is a two-part inquiry, which requires a showing that prison officials were aware of the risk to the inmate's health or safety and that they deliberately disregarded that risk. *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) (citing *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000)). "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quoting *Farmer*, 511 U.S. at 837)). "'A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk is obvious,'" *Foster*, 554 F.3d at 814 (quoting *Farmer*, 511 U.S. at 842), and "'if an inmate presents evidence of very obvious and blatant circumstances indicating that the prison official knew a substantial risk of serious harm existed, then it is proper to infer that the official must have known of the risk.'" *Thomas*, 611 F.3d at 1152 (quoting *Foster*, 554 F.3d at 814). "Second, the inmate must show that the prison officials had no 'reasonable'" justification for the deprivation, in spite of that risk. *Id*. at 1150-51 (quoting

*Farmer*, 511 U.S. at 844).

Defendants claims Plaintiff has not alleged facts showing Defendants Sherman and Pfeiffer were aware of a risk to Plaintiff and deliberately disregarded the risk. (Doc. 36 at 10.)

Petitioner alleges he wrote a letter to Warden Sherman and the Ad-Seg Committee while at SATF, informing them of his safety concerns. (Doc. 13 at 8.) Petitioner states Defendant Peterson spoke to Plaintiff in response to his letters and Peterson acknowledge that they were aware that Plaintiff would be seriously hurt or killed if transferred to HDSP. *Id*. However, Peterson stated "there was a price to pay" for Plaintiff speaking about the in-cell assaults.

Defendant contends there "are no allegations that show Sherman ever received or reviewed Plaintiff's letters." (Doc. 36 at 10.) Defendant also alleges that during their conversation, Peterson stated the Ad-Seg Committee members, not Sherman, were aware of Plaintiff's safety concerns. *Id*.

Defendant also contends Plaintiff has not alleged Defendant Pfeiffer was aware of and disregarded facts indicating Plaintiff would be harmed. *Id*. Plaintiff maintains he went before a "Classification Committee" headed by Warden Pfeiffer at KVSP and asked to be kept in protective custody; however, when Pfeiffer found that Plaintiff was accused of "Attempted Murder of a C.O.," Pfeiffer gave orders to place Plaintiff on A-yard. (Doc. 13 at 10.) Defendant reasons there are no allegations that Plaintiff told Pfeiffer about his safety concerns. (Doc. 36 at 14.) Nor are there allegations that Pfeiffer knew the reasons why Plaintiff requested protective custody. *Id*.

In considering a motion to dismiss, the undersigned must accept well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Daniels-Hall*, 629 F.3d at 998; *Sanders*, 504 F.3d at 910; *Huynh*, 465 F.3d at 996-97; *Morales*, 214 F.3d at 1153. Considering the totality of the circumstances, and leniently construing the FAC in Plaintiff's

favor,[4] the undersigned finds Plaintiff's allegations are sufficient to show that Defendants Sherman and Pfeiffer were aware of a substantial risk of harm to Plaintiff and unreasonably ignored the risk. Plaintiff alleges that he sent a letter to Defendant Sherman. An inmate plaintiff is entitled to an inference that that prison administrators received letters that the inmate sent to them which is asserted is under penalty of perjury.[5] *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (citing *Moore v. Jackson*, 123 F.3d 1082, 1087 (8th Cir. 1997)) (finding a triable issue of fact existed on summary judgment as to whether the administrator of the correctional facility received the letter sent by the inmate, which the administrator denied receiving). Plaintiff's allegations also show he spoke directly to Defendant Pfeiffer requesting they act based on a risk of harm. Therefore, at the pleading stage, Plaintiff's allegations suffice to show that both Sherman and Pfeiffer knew of and disregarded a risk of harm to Plaintiff.

### 4. **Defendants Are Not Entitled to Qualified Immunity**

Defendants allege they are entitled to qualified immunity, because they did not violate Plaintiff's clearly established rights. (Doc. 36 at 11.)

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context

---

[4] Courts in this circuit have an obligation to liberally construe the filings of *pro se* litigants, especially when they are civil rights claims by inmates, *Blaisdell v. Frappiea*, 792 F.3d 1237, 1241 (9th Cir. 2013), and *pro se* complaints "may only be dismissed 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014) (quoting *Wilhalm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012)). "This rule relieves *pro se* litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them." *Blaisdell*, 729 F.3d at 1241.

[5] Plaintiff signed the FAC under penalty of perjury. (*See* Doc. 13 at 19.)

of the case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)); *see also Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016). These prongs need not be addressed in any particular order. *Pearson v. Callahan*, 555 U.S. 223 (2009).

To determine whether a government official should be granted qualified immunity, under the first prong, the facts are to be viewed "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds by Pearson*, 355 U.S. at 817-21); *see also Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010).

Under the second prong, clearly established law is not to be defined "at a high level of generality." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *see also Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 136 S.Ct. at 308 (emphasis in original). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotation marks omitted). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" to officers, but "in the light of pre-existing law the unlawfulness must be apparent." *White*, 137 S.Ct. at 552 (internal citations omitted).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichel*, 132 S.Ct. at 2092; *see also Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (internal citation and quotation marks omitted). "We do not require

a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 741. "[A] 'robust consensus of cases of persuasive authority'" in the Courts of Appeal "could establish the federal right [in question]." *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1778 (2015).

As discussed, *supra*, the facts alleged by Plaintiff are sufficient to show that, if true, Defendants' conduct violated Plaintiff's Eight Amendment rights. Thus, under the second prong of the qualified immunity analysis, case law must be reviewed to determine whether the deliberate indifference to a serious threat of harm violated a right that was clearly established in late 2015.

It has been clearly established by the Supreme Court since the 1990s that prison officials have a duty to protect prisoners from harm by other prisoners. *See Farmer*, 511 U.S. at 833. The Ninth Circuit, two years before the events underlying this case, reiterated that prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad*, 714 F.3d at 1160 (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)).

When liberally construed, Plaintiff's allegations show that Defendants' conduct violated a constitutional right under the Eighth Amendment, which was clearly established in late 2015. *Tarabochia*, 766 F.3d at 1121. Consequently, Defendants are not entitled to qualified immunity at the pleading stage.

## IV. <u>Recommendation and Conclusions</u>

Based on the foregoing, the undersigned recommends that Defendant's motion to dismiss, (Doc. 36), should be **DENIED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **<u>twenty-one (21) days</u>** after being served with these Findings and Recommendations, either party may file written

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **February 19, 2019**                              /s/ *Sheila K. Oberto*
                                                                              UNITED STATES MAGISTRATE JUDGE