UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS BONILLA CASTANEDA,<br><br>Plaintiff,<br><br>v.<br><br>SHERMAN, et al.,<br><br>Defendants. | Case No.: 1:16-cv-01562-LJO-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**<br><br>(Doc. 56)<br><br>21-DAY DEADLINE |

Defendants move for summary judgment on the grounds that Plaintiff failed to exhaust administrative remedies prior to filing suit. (Doc. 56.) Plaintiff filed an opposition to Defendants' motion on November 6, 2019, and Defendants filed a reply. (Docs. 60-62.) For the reasons set forth below, the Court recommends that Defendants' motion be granted in part and denied in part and that Hacker and Sherman be dismissed as defendants.

**I.     SUMMARY OF FACTS**

   **A. Plaintiff's Factual Allegations**

Plaintiff's claims stem from events that occurred while he was incarcerated at Substance Abuse Treatment Facility and State Prison, Corcoran (SATF), High Desert State Prison (HDSP), and Kern Valley State Prison (KVSP). (Pl.'s Statement of Undisputed Facts (SUF), ¶ 2, Doc. 61 at 2.) Plaintiff alleges that, while at SATF, prison staff intentionally placed assaultive inmates in

his cell. (Doc. 13 at 7.) Plaintiff states that he attempted to report staff's conduct to the unit classification committee (UCC), including Associate Warden Collins, Correctional Captain Hacker, and Correctional Counselor Williams, but the committee made no changes to Plaintiff's housing assignment at that time. (*Id.*) Plaintiff alleges that, once he finished addressing the UCC, Defendant Collins told Plaintiff that if he reported the assaults, Collins would ensure that Plaintiff was hurt or killed by other inmates. (*Id.* at 8.)

Plaintiff nevertheless reported the assaults, and was then placed in administrative segregation (ad-seg) and approved for transfer to HDSP. (*Id.*) Since other inmates in ad-seg were also approved for transfer to HDSP, if Plaintiff were transferred with them, his safety concerns would no longer be "localized." (*Id.*) Plaintiff alleges that he informed Correctional Counselor Peterson of his concerns, who responded that Plaintiff "had been warned to not report the in-cell assaults by defendant Collins, that there was a price to pay." (*Id.* at 9.)

Plaintiff was transferred to HDSP on December 11, 2015. (*Id.*) He informed HDSP's UCC of his safety concerns, which then approved him for transfer to KVSP. (*Id.*) Plaintiff was transferred on January 6, 2016. (*Id.*)

Once at KVSP, Plaintiff informed Correctional Officer Acebedo of the events at SATF and HDSP. (*Id.*) Plaintiff appeared before KVSP's UCC on January 14, 2016, which included Defendant Acebedo and Correctional Officer Jones (not a defendant). (*Id.* at 10.). Plaintiff alleges that Acebedo told Plaintiff that he spoke with Defendant Williams at SATF and "had been advised to not allow plaintiff to escape his punishment," and that he planned to return Plaintiff to "A-yard." (*Id.*) On January 21, 2016, Plaintiff again appeared before the UCC, which was headed by Warden Pfeiffer, and requested not to be returned to A-yard. (*Id.*) Plaintiff alleges that, once Defendant Pfeiffer "came across the reference to 'Attempted Murder of a C.O.' [Pfeiffer] said 'send him back to A-yard.'" (*Id.*) Plaintiff states that he was placed in a cell with an inmate who was a "verified Mexican Mafia member," and that he was "kept prisoner in his cell by his cellmate." (*Id.* at 11.)

Plaintiff visited medical staff on January 25, 2016, and expressed suicidal "ideation as a result of custody actions." (*Id.*) Medical staff sent Plaintiff to the Correctional Treatment Center

2

(CTC) and placed him under psychiatric care. According to Plaintiff, on or about February 10, 2016, Defendant Acebedo visited Plaintiff at CTC and stated that he would "ensure that plaintiff was returned to A-yard." (*Id.*)

Plaintiff alleges that, on February 24, 2016, Acebedo instructed staff to return him to A-yard. (*Id.* at 12.) After the escorting officers departed, Plaintiff informed A-yard staff of his safety concerns, who then placed Plaintiff in a "holding cell at medical until arrangements could be made to return … [him] to Ad-Seg." (*Id.*)

## B. Plaintiff's Attempts to Exhaust Administrative Remedies

Plaintiff exhausted two administrative grievances regarding the incidents underlying this action between August 21, 2015, the date Defendant Collins threatened Plaintiff, (*see* Spaich Decl., Ex. D, Doc. 56-4 at 55), and July 10, 2017, the date Plaintiff filed his operative complaint, (*see* Docs. 13, 20). (*See* Defs.' SUF, ¶ 15, Doc. 56-3 at 3; *see also* Spaich Decl., ¶ 10, Doc. 56-4 at 4.) In the first grievance (appeal log no. KVSP-16-00627), Plaintiff states the following:

> On 8/21/15, at SATF, A.W. Collins threatened to have inmates assault me if I reported a PREA assault. The following week I reported it and Collins followed through on his threat. On or about 10/19/15, CCI Peterson told me that I would be assaulted no matter where I went. (These C.O.'s were addressed on a separate 602) On or about 1/10/16 and 1/14/16 I informed CCII Acevedo [sic], and some other counselors about safety concerns on A yard. I was placed in Ad-Seg but these individuals recommended I be returned to A yard…. In Ad-seg I notified the counselor (1/20/16) the seargent [sic] and Associate Warden (1/21/16) about these safety concerns. On 1/21/16 these individuals conspired to have me stabbed or killed by placing me back on A yard. On or about 2/1/16, CCII Acevedo told me that He was going to ensure that I was returned to A yard in spite of my safety concerns…. All of these individuals knew that I was going to be hurt or killed but intentionally ignored safety concerns in order to carry out the threat issued by A.W. Collins. Acevedo and another counselor carried out instructions issued by CCI Peterson and CCII Williams to have me hurt or killed.

(Spaich Decl., Ex. D, Doc. 56-4 at 55, 57.) Plaintiff further states, "I want this processed as a staff complaint against all of the KVSP personnel identified herein, as well as those alluded to but not I.D.'d [sic]. I want those to be identified to me." (*Id.* at 55.)

CDCR bypassed the first level of review and processed Plaintiff's grievance at the second and third levels. (*See id.* at 53-60.) In its third-level review, CDCR states that "[i]t is appellant's position that after informing multiple staff of his safety concerns, the January 21, 2016,

3

Classification Committee conspired to have him stabbed or killed by placing him back on the 'A' yard." (*Id.* at 53.) Staff denied the appeal and stated that the "decision exhausts the administrative remedy available to the appellant." (*Id.* at 53-54.)

In the second grievance (appeal log no. KVSP-16-00822), Plaintiff states, "[o]n 2/24/16 they deleted my lock-up order and had me returned to A yard (again) on false pretenses so that I could be killed/Assaulted (Acevedo [sic], R. Jones and others)." (Spaich Decl., Ex. C, Doc. 56-4 at 41.) CDCR again bypassed the first level of review and processed Plaintiff's grievance at the second and third levels, denying it at the third. (*See id.* at 39-44.)

Plaintiff brought suit on October 17, 2016. (Doc. 1.) Plaintiff's operative claims are against the defendants at SATF: Correctional Counselor Peterson, Correctional Counselor Williams, Correctional Captain Hacker, Associate Warden Collins, and Warden Sherman; and the defendants at KVSP: Correctional Counselor Acebedo and Warden Pfeiffer. (Doc. 20.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that Plaintiff failed to exhaust that remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citations omitted). If the defendant meets this burden, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him…." *Id.* If the plaintiff fails to

meet this burden, the court must dismiss the unexhausted claims or action without prejudice. *See Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005).

### C. CDCR Grievance Process

The CDCR has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs., tit. 15, § 3084.1(a). Compliance with 42 U.S.C. section 1997e(a) requires California state prisoners to use CDCR's grievance process to exhaust their claims before filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 85-86. All administrative appeals are subject to three levels of review before the remedy is deemed exhausted. Cal. Code Regs., tit. 15, § 3084.1(b); s*ee also Sapp*, 623 F.3d at 818.

## III. DISCUSSION

Defendants do not dispute that Plaintiff exhausted two administrative grievances relevant to the issues underlying this action. (*See* Defs.' SUF, ¶ 15, Doc. 56-3 at 3.) Defendants also do not dispute that these two grievances exhausted Plaintiff's claims against Acebedo. (*Id.*, ¶ 16.) The parties disagree, however, on whether either of these grievances exhausted Plaintiff's claims against the remaining defendants. (*Compare id. with* Pl.s' SUF, ¶ 16, Doc. 61 at 4.)

Defendants do not meet their burden in showing that Plaintiff failed to exhaust with respect to Collins, Peterson, and Pfeiffer. Because CDCR rendered a decision on the merits of Plaintiff's first grievance (KVSP-16-00627), any potential procedural flaw on the part of Plaintiff is excused. *See Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (holding that a prisoner exhausts administrative remedies "despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance"). Furthermore, the Court finds that CDCR was on notice of the claims against Collins, Peterson, and Pfeiffer.

The Court finds that Plaintiff failed to exhaust with respect to Hacker and Sherman, since he neglected to name them in his grievance and failed to provide sufficient information to allow CDCR to identify them. Because Defendants meet their burden, the burden shifts to Plaintiff to

show that a remedy was unavailable in his case. *Williams*, 775 F.3d at 1191. For the reasons set forth in subsection C, *infra*, Plaintiff does not meet this burden. Therefore, the Court recommends that Hacker and Sherman be dismissed as defendants.

### A. Plaintiff exhausted with respect to Collins, Peterson, and Pfeiffer

The PLRA requires "proper exhaustion," which means that "the prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93. The rules that must be followed, in other words, "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system …, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* However, a prisoner exhausts administrative remedies "despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *See Reyes*, 810 F.3d at 658.

Prior to 2011, California's grievance procedures only required inmates to "describe the problem and the action requested." *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting former Cal. Code Regs. tit. 15, § 3084.2). The regulations were amended in 2010, with the changes becoming operative in 2011. *See* Cal. Code Regs. tit. 15, § 3084.2 (History Notes 11-12). Since then, state regulations require the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

Defendants contend that Plaintiff's first relevant grievance (KVSP-16-00627) failed to exhaust with respect to all defendants except Acebedo because (1) it "specifically asked prison officials to only process the appeal as a staff complaint against the KVSP personnel identified in

7

the appeal," and "Collins, Williams, Peterson, Hacker, and Sherman were employed at SATF, not KVSP," and (2) "the appeal did not identify Pfeiffer by his name or title as Warden of KVSP, and did not include any other facts that would put prison officials on notice of Pfeiffer's alleged misconduct." (Doc. 56-2 at 12.)

Plaintiff contends his first grievance exhausted his claims against the defendants because it "identifies Collins, Peterson, Acevedo [sic], Williams, and others (whose name and title … plaintiff did not know." (Doc. 60 at 5 (emphasis in original).) Plaintiff asserts that his grievance placed CDCR on notice of the actions against all those identified, even if he requested that the complaint be processed only against certain staff members. (*Id.*) Plaintiff also notes that his grievance identified the "head of the 1/21/16 committee," which was Pfeiffer, even if he incorrectly listed him as a an "Associate Warden." (*Id.* at 4 (emphases in original).)

The Court agrees with Plaintiff with respect to Collins, Peterson, and Williams. Though Plaintiff requested CDCR process his complaint against KVSP personnel, he clearly identified Collins, Peterson, and Williams by name and title, described their involvement in the issues under appeal, and provided facts known to him about said issues. (*See* Spaich Decl., Ex. D, Doc. 56-4 at 55.) Thus, he complied with all applicable CDCR regulations. *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3)-(4). Even though CDCR only processed the grievance against Acebedo, because Plaintiff complied with its grievance procedures, the Court finds that Plaintiff exhausted with respect to these three defendants. *See Sapp*, 623 F.3d 824 ("grievance suffices to exhaust a claim if it …. provide[s] the level of detail required by the prison's regulations").

Moreover, even if Plaintiff did not comply with a CDCR procedure, the Court finds that he is excused from any procedural defects under *Reyes v. Smith*. In *Reyes*, although the plaintiff failed to name two defendants in his administrative appeal, the Ninth Circuit held that CDCR waived the procedural flaw because it addressed Plaintiff's claims on the merits. *See* 810 F.3d at 657-58. Accordingly, if Plaintiff committed any procedural violations by failing to name Pfeiffer or to provide his correct title, or by requesting that the appeal be processed against KVSP personnel, Plaintiff is excused from such violations because CDCR rendered a decision on the merits of the appeal. *See Reyes*, 810 F.3d at 658.

1    To comply with the PLRA's exhaustion requirement, Plaintiff's appeal must also "alert[ ]
2    the prison to the nature of the wrong for which redress is sought" and provide sufficient
3    information "to allow prison officials to take appropriate responsive measures." *Id.* (quoting
4    *Griffin v. Arpaio*, 557 F.3d 1117, 1120, 1121 (9th Cir.2009)). The Court finds that it does. In
5    *Reyes,* CDCR cited the decision of the prison's "Pain Management Committee" in denying the
6    plaintiff's appeal. *Id.* at 659. Since the two defendants whom the plaintiff failed to name were
7    members of that committee, the court held that prison officials were on notice of the nature of the
8    wrong alleged and the parties involved. *See id.* Here, Plaintiff explicitly names Collins, Peterson,
9    and Williams and describes their alleged misconduct. (Spaich Decl., Ex. D, Doc. 56-4 at 55, 57.)
10   Thus, CDCR was clearly on notice of the nature of the wrong alleged and these defendants'
11   involvement. In addition, CDCR notes that Plaintiff's claims concerned "the January 21, 2016,
12   Classification Committee," of which Pfeiffer was the head. (*Id.* at 53; Doc. 13 at 10; *see also*
13   Doc. 56-2 at 4.) Thus, CDCR was also on notice of Pfeiffer's involvement in the incidents of
14   which Plaintiff complains.

15   "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to
16   provide personal notice to a particular official that he may be sued." *Jones v. Bock*, 549 U.S. 199,
17   219 (2007). Plaintiff's appeal accomplished this goal because it placed CDCR on notice of the
18   problems regarding Plaintiff's housing assignments and staff's involvement. Accordingly, the
19   Court finds that Plaintiff exhausted his remedies with respect to Collins, Peterson, and Pfeiffer.

20   **B. Plaintiff failed to exhaust with respect to Hacker and Sherman**

21   Neither of the two relevant grievances that Plaintiff exhausted (KVSP-16-00627 and
22   KVSP-16-00822) name Hacker or Sherman, nor provide any information that would assist an
23   appeals coordinator in attempting to identify them. (*See* Spaich Decl.; Exs. C, D; Doc. 56-4 at 41,
24   55, 57.) Unlike Pfeifer, these defendants were not a part of the January 21 UCC. Thus, even if
25   *Reyes* excuses Plaintiff from the procedural flaw of failing to name Hacker and Sherman, the
26   Court finds that the grievances were insufficient to alert CDCR to the nature of the wrongs they
27   allegedly committed. *See Griffin v. Arpaio*, 557 F.3d at 1120. Defendants, therefore, meet their
28   burden in showing that Plaintiff failed to exhaust with respect to Hacker and Sherman.

### C. Plaintiff is not excused from failing to exhaust with respect to Hacker and Sherman

Plaintiff must only exhaust administrative remedies that are "available;" he "need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858 (2016). The Supreme Court has identified three circumstances under which a remedy is unavailable: (1) the remedy "operates as a simple dead end," (2) the "administrative scheme … [is] so opaque that …. no ordinary prisoner can discern or navigate it," and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Plaintiff contends that Defendants intentionally thwarted his efforts to file grievances against the defendants. (Doc. 60 at 1.) In addition to the two grievances discussed above, Plaintiff alleges that he filed other grievances that would have exhausted his claims, but prison officials rejected them. (*See id.* at 2-3.) Plaintiff further alleges that prison staff confiscated his property, which contained evidence of these rejected appeals. (*See id.* at 7.)

Defendants contend that, "[t]he fact that Plaintiff successfully filed and exhausted his claims against Acebedo … directly contradicts his claim that he was prevented from exhausting his claims against the other Defendants…." (Doc. 62 at 7.) The Court agrees; either Plaintiff filed grievances that exhausted his claims—as he contends, or prison staff prevented him from filing grievances. Plaintiff cannot have it both ways.

The fact that CDCR exhausted two of Plaintiff's non-medical appeals during the relevant time period—six appeals, if four appeals not related to the incidents underlying this action are included, (*see* Spaich Decl., ¶ 9, Doc. 56-4 at 3-4)—refutes Plaintiff's contention that staff thwarted his efforts to file appeals. For this reason, the Court finds that Plaintiff does not meet his burden in showing that an administrative remedy was unavailable to him, *see Williams*, 775 F.3d at 1191; thus, he is not excused from failing to exhaust with respect to Hacker and Sherman.

///
///
///
///

## IV. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court recommends that Defendants' motion for summary judgment, (Doc. 56), be **GRANTED IN PART** and **DENIED IN PART**. The Court recommends that (1) Hacker and Sherman be **DISMISSED** as defendants and (2) Plaintiff's claims against Acebedo, Collins, Peterson, Pfeiffer, and Williams be allowed to proceed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**January 13, 2020**__ /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE